PER CURIAM.
This is a petition for a writ of certiorari to review a decision of the Unemployment Compensation Board of Review of the Florida Industrial Commission brought by petitioner, Eastern Air Lines, pursuant to § 443.07(4) (e), Florida Statutes, F.S.A.
As a consequence of a strike by certain airline employees, large numbers of nonstriking employees of petitioner, Eastern *606 Air Lines, were temporarily removed from the payroll immediately after the beginning of the strike on July 8, 1966. We are here concerned with two particular groups of these non-striking employees who filed claims for unemployment benefits.
Group A is comprised of employees whose vacations were scheduled during the period of the strike, commencing immediately following the initiation of the strike. These employees received vacation pay from Eastern for that period.
Group B is comprised of employees whose vacations were scheduled at later dates, but who executed the following form sent to them by Eastern:
“FORM #4
(Vacation Election Notice) EASTERN AIR LINES, INC.
“TO: J. E. Wood Miami
“FROM: _ CLASSIFICATION: _
“This is to advise that I hereby elect to reschedule my vacation to take same during the present strike period.
“My Vacation is scheduled from-to-
“I request it be rescheduled from-to-
“I understand that I will be expected to return to work immediately following the strike even though my vacation has not been completed.
“My present shift hours start_end-
“My days off are-and —¡_
“_Emp.No_Cost Center No_”
Signature

“MIAAA Payroll
“The request for the above employee to reschedule his vacation is approved.
“_ Title_”
Employee Supervisor
These employees elected dates for vacations which were within the strike period, and they also received vacation pay from Eastern.
Both groups filed claims for-, unemployment benefits, which claims were heard by a claims examiner. The decision of the examiner that neither group was entitled to benefits was affirmed as to group A claimants but reversed as to group B claimants by the Appeals Referee. The Board of Review affirmed the decision of the Appeals Referee, whereupon Eastern Air Lines brought a petition for writ of certi-orari.
Section 443.04(3) (a), Florida Statutes, F.S.A., governs any decision as to who shall receive unemployment benefits. It reads:
“Each eligible individual who is totally unemployed in any week shall be paid with respect to such week a benefit in an amount equal to his weekly benefit amount.”
*607 The burden is upon the claimant to prove by substantial competent evidence that he comes within the purview of the statute and is thus entitled to receive benefits. Newkirk v. Florida Industrial Commission, Fla.App.1962, 142 So.2d 750; Teague v. Florida Industrial Commission, Fla.App. 1958, 104 So.2d 612. As a part of this burden of proof, the claimant must show that he is “totally unemployed”.
We recognize the principle that the decisions of the Board of Review and Appeals Referee should not be disturbed if supported by substantial competent evidence. Teague v. Florida Industrial Commission, supra. However, since the Legislature has seen fit to define the term “unemployed”, the statute must provide the yardstick by which the evidence is measured. Section 443.03(12) (a), Florida Statutes, F.S.A., as it pertains hereto, recites :
“An individual shall be deemed ‘totally unemployed’ in any week during which he performs no services and with respect to which no wages are payable to him * *
It is conceded that, during the period in question, claimants performed no services whatsoever. Therefore, the question of unemployment resolves itself into the narrower issue of whether or not the claimants received any “wages” during the period.
Again, recourse lies in the statute. Section 443.03(13) (a), Florida Statutes, F.S.A., provides:
“ ‘Wages’ means all remuneration paid for services from whatever source, including commissions and bonuses and the cash value of all remuneration paid in any medium other than cash.”
This definition is sufficiently broad to encompass vacation pay. Therefore, an employee on a paid vacation, while he performs no services, is not unemployed within the meaning of § 443.04(3) (a), Florida Statutes, F.S.A. The Board of Review correctly held that group A claimants, whose vacations were scheduled immediately after July 8, and who received vacation pay, were not entitled to unemployment benefits.
As to group B claimants, respondents contend that an election was made to take “pay in lieu of a vacation”, rather than to take a vacation with pay, relying upon the case of Renown Stove Co. v. Michigan Unemployment Compensation Commission, 328 Mich. 436, 44 N.W.2d 1 (1950). In Renown, employees who had been laid off because of lack of work began collecting unemployment benefits. The employer then announced that, beginning on a set date, vacations would commence and vacation pay would be issued for either one or two weeks, depending upon the employee’s classification. The company then objected when employees continued to receive unemployment compensation during the announced vacation period. On appeal, the Supreme Court of Michigan held that certain of the employees were entitled to benefits, whereas others were not. Referring to those employees who were entitled to the benefits, the opinion states:
“The employees covered by this contract exercised their option and elected to receive a bonus of 40 or 80 hours’ pay in lieu of a vacation with pay, as they had a right to do under the contract.”
The case at bar is readily distinguishable on the basis that none of the claimants of either group had the right under the terms of their contracts of employment to elect pay in lieu of a vacation. Further, in Renown, the court asserts that pay in lieu of a vacation is a “bonus”, not compensation. However, under the express terms of § 443.03(13) (a), Florida Statutes, F.S.A., a bonus would come within the definition of “wages”.
Respondents also rely upon the case of Oglebay Norton Co. v. Industrial Commission, 15 Wis.2d 396, 113 N.W.2d 35 (1962), wherein claimants for unemployment bene *608 fits lost or left their jobs because of a strike against the company. Vacations were normally scheduled in July and August, but in July the company notified the employees that operations would cease immediately after the strike ended in order that the employees might take vacations at that time. In November when the strike ended, the company issued checks for vacation pay and closed its doors. The employees filed claims for unemployment benefits during this “vacation period”, which claims were upheld by the Supreme Court of Wisconsin. The court reasoned that the contract of employment called for specific periods in July and August to which vacation pay must be allocated, so that the claimants were “unemployed” during the November shut-down. This, despite the fact that the claimants received “vacation pay” in November.* However, the court said at page 41:
“We are dealing, of course, with the intention of the parties as expressed in an agreement. It would be possible for an agreement to provide expressly or by necessary implication that absence from work during a certain period was to be treated as a vacation even though the employee was absent in support of or because of a strike.”
This language is sufficient to distinguish Norton from the case here before us.
We are persuaded by cases such as Nunamaker v. United States Steel Corporation, 2 Ohio St.2d 55, 206 N.E.2d 206 (1965) which we consider to be more analogous to the case here before us. In Nuna-maker, claimants were advised that they would be laid off and at the same time were asked whether they wished to take vacations with pay during that period in which the work stoppage would occur. In holding that the claimants were not entitled to receive unemployment benefits, the court stated in its opinion:
“Notwithstanding that he voluntarily elected to take his vacation and vacation pay for the week in question, each claimant-appellee contends that he was not employed during that week (i.e., he did not perform services for wages as defined in Section 4141.01(B) Revised Code, in the period of that week) because he was informed that he would be laid off, and thus, under Section 4141.31(B) (2) Revised Code, then in effect, he was unemployed for reasons other than being on ‘vacation’.
“We are of the opinion, however, that this begs the fundamental question: Was he unemployed during the week within the purview of the statutes? We hold that that question must be answered in the negative.
“Section 4141.01 (M) provided that ‘[a]n individual is “totally unemployed” in any week during which he performs no services and with respect to such week no remuneration is payable to him.’ That claimant-appellees performed no services for wages during the week is conceded. However, each was paid remuneration with respect to such week in the form of vacation pay as a result of his unilateral and voluntary election. * * *
“There can be no doubt that vacation pay is ‘remuneration’, defined by Section 4141.01(H) in including ‘all compensation for personal services’. * * * The conclusion follows that each was not ‘totally unemployed,’ and, therefore, was not eligible for any benefits.”
This reasoning is sound, and we adopt it as our own. See also Allen v. Maryland Employment Security Board, 206 Md. 316, 111 A.2d 645 (1955). The Board of Review, then, was incorrect in holding that the group B claimants were entitled to employment benefits.
Accordingly, certiorari is granted, the decision under review is quashed, and the cause is remanded with directions to enter an appropriate order not inconsistent with this opinion.
It is so ordered.