KAHN, J.
Lisa B. Hardy appeals an order of the Unemployment Appeals Commission (Commission) affirming the appeals referee’s denial of her claim for unemployment compensation benefits. Hardy sought benefits for a twelve-week period during *685 which her employer, American Airlines, Inc. (American) placed her on a mandatory leave of absence due to her pregnancy. We reverse.
The facts in this case are essentially undisputed. Hardy began working as a flight attendant for American in March 1987. During Hardy’s third pregnancy, as with her previous pregnancies, American placed her on a mandatory leave of absence beginning twelve weeks prior to her expected due date. This mandatory leave of absence evidently occurred pursuant to provisions in Hardy’s union contract. Hardy was- expected to return to work on November 1, 1999, and was guaranteed reemployment at the conclusion of her leave of absence.
As she had during her previous pregnancies, Hardy filed a claim for unemployment benefits for the twelve-week period. The appeals referee found that Hardy voluntarily initiated her leave of absence and denied her claim:
The record clearly shows that the claimant, as a result of her becoming pregnant, put in motion the operation of the union contract that required she go on a leave of absence. The mandatory policy of the company was one to which the claimant had agreed to through the union contract which was in force at the time. There is no showing whatsoever that the employer had anything to do with the claimant’s state of health which precipitated the leave of absence. Had the claimant not become pregnant, the leave of absence provisions would not have been operative. It is concluded that the claimant was on a leave of absence which was initiated by her from June 13, 1999, through November 1, 1999, and is therefore, ineligible to receive unemployment compensation benefits.
The Commission affirmed the referee’s decision. Because the referee erred in concluding that Hardy voluntarily initiated her leave of absence, we reverse.
The referee essentially concluded that Hardy voluntarily initiated her leave of absence by virtue of becoming pregnant. Section 443.101(l)(c), Florida Statutes (1999), disqualifies individuals from receiving unemployment compensation benefits “[f]or any week with respect to which the division finds that his or her unemployment is due to a leave of absence, if such leave was voluntarily initiated by such individual.” As the Fourth District has explained, “[n]o Florida appellate court has directly addressed the.issue of interpretation of section 443.101(l)(c), although the Third District has concluded flight attendants required by a collective bargaining agreement to take a leave of absence during pregnancy were not automatically unavailable for work.” Shu v. Unemployment Appeals Comm’n, 710 So.2d 108, 109 (Fla. 4th DCA 1998); see Baeza v. Pan Am./Nat’l Airlines, Inc., 392 So.2d 920 (Fla. 3d DCA 1980).
Although no Florida decision on point could be located, decisions from other states indicate that pregnant claimants placed on mandatory leaves of absence because of their pregnancy are eligible for unemployment benefits, regardless of whether the leaves are pursuant to a company policy or a collective bargaining agreement. See Douglas Aircraft Co. v. California Unemployment Ins. Appeals Bd., 180 Cal.App.2d 636, 648, 4 Cal.Rptr. 723 (1960) (“It is entirely immaterial, however, whether her leaving was the result of company policy or a collective bargaining agreement.”); Myerson v. Board of Review, Div. of Employment Sec., 43 N.J.Super. 196, 128 A.2d 15, 17-18 (Ct.App.Div.1957) (“Unemployment compensation is not to be denied persons merely because the employer or the collective bargaining agreement designates a period of unemployment as a leave of absence- [U]n-employment brought upon certain workers as a result of a contract made by their union does not, just because of the contract, become voluntary in character so as to deprive them of unemployment compensation.”). Further, at least one decision *686 from another state, which involved mandatory maternity leave for flight attendants after their 27th week of pregnancy, indicates that “whether claimants become pregnant of their own volition is totally irrelevant to their eligibility for [unemployment] benefits.” Frontier Airlines, Inc. v. Industrial Comm’n of the State of Colo., 734 P.2d 142, 144 (Colo.Ct.App.1986). Based on these decisions, we conclude the referee erred in determining that Hardy voluntarily initiated her leave of absence because of becoming pregnant.
In addition, the decision in Shu supports reversal here. In Shu, a pregnant letter carrier requested light duty work during her pregnancy in accordance with restrictions imposed by her doctor. See Shu, 710 So.2d at 109. During a previous pregnancy, Shu had received light duty assignments such as answering phones or sorting mail. See id. This time, however, her manager indicated no light duty work was available during the requested period, but that Shu could return to full-duty status following the birth of her baby. See id. The appeals referee found benefits due, but the Commission reversed the referee’s decision, concluding that Shu was disqualified from benefits because she was on a leave of absence that she voluntarily initiated. See id. at 108-09. On appeal, the Fourth District disagreed with the Commission’s conclusion that Shu “voluntarily initiated” her leave of absence:
Shu testified she did not request to be •put on leave, rather she informed her employer she wanted to continue working. Shu was not automatically unavailable for work. Under the facts of this case, it is difficult to understand how Shu could have initiated a leave she expressly oppdsed. Therefore, we reverse the UAC’s order and remand for reinstatement of unemployment compensation benefits.
Id. at 109. The court noted that, although no other Florida cases were on point, decisions from other states supported eligibility for benefits in similar circumstances.
Similarly, in this case, the referee erred in concluding that Hardy voluntarily initiated her leave of absence. As in Shu, the record and undisputed facts in this case demonstrate that Hardy did not request this leave of absence; rather, American Airlines automatically prohibits all pregnant flight attendants from flying during the last twelve weeks of pregnancy. Cf. General Tel. Co. of Fla. v. Board of Review, 356 So.2d 1357 (Fla. 2d DCA 1978) (affirming denial of unemployment benefits where pregnant claimant “asked for leave of absence and company policy would have allowed her to continue to work despite the pregnancy”). Hardy specifically testified that she was “able to work, but just not as a flight attendant.” Hardy explained that she was “still able to work at some other type of job ... a job on the ground.” Hardy also testified that during previous pregnancies she, like other flight attendants, had received unemployment benefits during this twelve-week period and that the “maternity coordinator ... tell[s] us now that we can go ahead and file for unemployment.” Presumably, the “maternity coordinator” instructs these pregnant flight attendants to file for unemployment because no suitable jobs on the ground are available. We note that American Airlines apparently chose not to participate in the hearing. As in Shu, it is difficult to understand how Hardy could have initiated this leave of absence when she was available to work and her “maternity coordinator” instructed her to file for unemployment benefits.
REVERSED.
JOANOS and ALLEN, JJ., concur.